**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 28 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JUSTIN JENSEN,

     Defendant - Appellant.

No. 01-4178
(D.C. No. 2:00-CR-434-S)
(District of Utah)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **MURPHY**, Circuit Judge.

Defendant-appellant Justin Jensen was indicted on a single count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Jensen moved to suppress the firearm, a handgun found during a search of his truck, on the ground that the stop of the truck was not supported by reasonable suspicion or probable cause. The district court denied the motion to suppress,

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

concluding that the investigative stop of the truck was supported by reasonable suspicion. Jensen thereafter entered a conditional guilty plea pursuant to Fed. R. Crim. P. 11(a)(2), preserving his right to appeal the district court's denial of his suppression motion. On appeal, Jensen does not challenge the district court's factual findings. Instead, he simply asserts that the district court erred in concluding that those facts amounted to reasonable suspicion of wrongdoing. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms** the district court.

In the early morning of September 13, 2000, several law enforcement officers were executing a search warrant at a known drug and gang flophouse in a high crime neighborhood in Kearns, Utah. The owner of the home, Gary Whitaker, had a history of drug use and distribution, as well as possession of guns. While the officers were executing the warrant, Whitaker returned home and was stopped as he pulled into the driveway. He was found to be in possession of one ounce of wet methamphetamine and a semiautomatic weapon.

During Whitaker's arrest, officers saw two vehicles driving in tandem approach the area. The lead vehicle, a small truck, turned onto the street where the officers were executing the search warrant. The second vehicle also began to turn onto the street but aborted the turn and sped away after appearing to notice the officers in the front yard wearing conspicuously marked police attire. After

the truck turned onto the street, it slowed to a crawl as if the driver intended to stop at the house where the officers were executing the warrant. Deputy Sheriff Tracy Wyant testified that when executing a warrant at a known drug flophouse, officers anticipate that drug buyers or sellers may approach the house. For just this reason, Wyant indicated that officers "typically have a vehicle, at least one individual in a vehicle just like this in a scenario in order to stop cars that attempt to come into a residence where we have done search warrants." Accordingly, as the truck slowed down, the officers became "concerned about officer safety, namely if someone was going to come by and take a shot" at them. Deputy Wyant and FBI Special Agent Juan Becerra shined their flashlights at the two men in the truck. The driver of the truck, later identified as Jensen, appeared "very nervous." Jensen's body movements became rigid and jerky and his eyes became enlarged. Deputy Wyant described Jensen's reaction as a "deer in the headlights" look that was suspicious.

Because Jensen's behavior seemed suspicious, Deputy Wyant yelled "stop, sheriff's office," and other officers yelled "stop, police." Jensen did not comply, but instead began to accelerate out of the area. Deputy Wyant and Agent Becerra began running after the truck, shouting for it to stop. Jensen still did not stop the truck; it appeared to Wyant that Jensen was "trying to get away from" or flee

from the officers. Jensen was ultimately forced to slow down for two large dips in the road and finally stopped the truck as officers caught up to him.

As the truck came to a stop, Deputy Wyant approached the driver's side and Agent Becerra approached the passenger's side. After briefly explaining the reason for the stop, Wyant asked Jensen for identification and if there were any weapons in the vehicle. In response, Jensen indicated that there was a gun underneath his seat. Deputy Wyant asked Jensen to step out of the truck and told him that he was not being arrested but only detained for officer safety purposes. Jensen was placed in handcuffs and frisked for weapons. With the door of the truck open, the handgun was clearly visible under the driver's seat. During a search of the truck, officers retrieved the gun, a scale, and a pipe used to smoke methamphetamine. Jensen was subsequently charged with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

In response to the indictment, Jensen filed a motion to suppress the gun. Jensen's suppression motion was referred to a magistrate judge for initial proceedings pursuant to 28 U.S.C. § 636(b)(1)(B). After conducting evidentiary hearings, the magistrate judge issued a report and recommendation, which recommended that Jensen's motion be denied. The magistrate judge found that "Wyant was aware of the house being a drug flophouse; that [Jensen's] truck had slowed down to a crawl; that [Jensen] acted nervously; and that [Jensen] had tried

-4-

to flee when initially asked to stop."  Accordingly, based on the totality of the circumstances, the magistrate judge concluded that the investigatory stop was supported by reasonable, articulable suspicion that Jensen was engaged in illegal activity.  Upon *de novo* review, the district court adopted the report and recommendation and denied Jensen's motion to suppress.

Because Jensen does not challenge the district court's findings of historical fact, but instead only its ultimate conclusion that the stop was supported by reasonable suspicion, our standard of review is *de novo*.  *See United States v. Treto-Haro*, 287 F.3d 1000, 1002 (10th Cir. 2002) ("We review the ultimate determinations of reasonable suspicion to stop and probable cause to arrest de novo.").

There are three distinct types of police-citizen encounters:

> The first involves the voluntary cooperation of a citizen in response to non-coercive questioning.  The second is a *Terry v. Ohio*, 392 U.S. 1 (1968) stop, involving only a brief, non-intrusive detention and frisk for weapons when officers have a reasonable suspicion that the defendant has committed a crime or is about to do so.  The third encounter is the arrest of the defendant.

*United States v. Madrid*, 30 F.3d 1269, 1275 (10th Cir. 1994).  Both Jensen and the United States agree that this case involves the second type of encounter, an investigatory detention.[1]  To justify such a detention, officers "must be able to

---

[1]As noted above, Jensen's primary contention on appeal is that the district court erred in concluding that the stop of his truck was supported by reasonable

-5-

point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry*, 392 U.S. at 21. The reasonableness of a stop is "judged by an objective standard taking the totality of the circumstances and information available to the officers into account." *United States v. Lang*, 81 F.3d 955, 965 (10th Cir. 1996).

With this legal background in mind, Jensen asserts that the facts as found by the district court did not create reasonable suspicion of wrongdoing and that the officers effecting his stop acted on a mere hunch. *See Terry*, 392 U.S. at 27 (holding that an investigatory detention must be based on something more that an "inchoate and unparticularized suspicion or hunch" (quotation omitted)). In particular, Jensen notes that he was not named in the search warrant that the officers were executing and that his identity was not known to any officers when

---

suspicion of wrongdoing. In the alternative, however, Jensen asks this court to "modify the law" so that "reasonable suspicion is an insufficient basis to initiate the traffic stop of a vehicle being driven in a lawful manner at night, and that the heightened standard of probable cause is required." Such an approach is foreclosed by this court's recent decision in *United States v. Callarman*, wherein we reaffirmed that "[w]hile either probable cause or reasonable suspicion is sufficient to justify a traffic stop, only the lesser requirement of reasonable suspicion is necessary." 273 F.3d 1284, 1287 (10th Cir. 2001). Jensen is simply wrong in asserting that *Callarman* stands for the proposition that *Terry*-type traffic stops are only proper when the reasonable suspicion of wrongdoing relates to a traffic or equipment violation. Accordingly, Jensen has not cited to a single case supporting the propriety of his proposed "modification." Finally, Jensen has not advanced any convincing rationale for treating investigatory stops of vehicles at night any differently from the myriad other types of *Terry* stops.

they aimed their flashlights at him. Furthermore, neither he nor his passenger engaged in any contact with anyone in the vicinity of the dwelling being searched and did not exit the truck until it was stopped and they were ordered to exit by the officers. Finally, Jensen attempts to minimize the relevance of his attempt to flee after the officers requested that he stop. Jensen recognizes that the Supreme Court has held that flight in the face of a uniformed officer creates a reasonable suspicion of wrongdoing. *See Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000). According to Jensen, however, he simply "reasonably and sensibly slowed down upon approaching the scene of uniformed police activity at night and briefly voluntarily terminated the encounter in a reasonable and sensible way by speeding up within the speed limit before deciding to stop for officers on foot." Jensen also argues for the first time in his reply brief that his flight is irrelevant to the reasonable-suspicion calculus because it occurred only after the stop was initiated.

This court finds Jensen's arguments unavailing. Jensen was seen approaching a known drug and gang flophouse in a high crime neighborhood at 3:30 a.m. The Supreme Court has made clear that "the fact that [a] stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis." *Wardlow*, 528 U.S. at 124. Deputy Wyant testified that it was common for drug buyers and sellers to approach such flophouses during the execution of a

search warrant. Against this backdrop, Jensen approached the area traveling in tandem with another car that appeared to flee immediately upon spotting the officers. The truck then "slowed to an unusually slow crawl," leading Wyant to believe that the truck contained a drug buyer or seller. When the officers shined their flashlights in the truck, Jensen became "very nervous," displaying a "deer in the headlights" reaction upon seeing the police presence at the house. *See United States v. Soto-Cervantes*, 138 F.3d 1319, 1324 (10th Cir. 1998) (holding that although itself not sufficient to support reasonable suspicion, nervousness is a factor to be considered as part of the totality of circumstances). Jensen then accelerated and fled despite requests from the officers that he stop. This behavior "is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Wardlow*, 528 U.S. at 124. Although Jensen tries to characterize his actions as innocent behavior, the district court specifically found that he tried to flee. Furthermore, Jensen is wrong as a matter of law in asserting that this court cannot consider his flight because it occurred after he was seized, *i.e.*, after officers requested that he stop. Jensen was not seized until he actually complied with the officers requests to stop, a point in time after his initial attempt to flee. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("The narrow question before us is whether, with respect to a show of

authority as with respect to application of physical force, a seizure occurs even though the subject does not yield.  We hold that it does not.").

When the totality of the circumstances are considered, it becomes clear that the investigatory stop of Jensen's truck was supported by reasonable suspicion of wrongdoing.  Accordingly, the order of the United States District Court for the District of Utah denying Jensen's suppression motion is hereby **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge